SCHULTZ v. SCOTT.  (No. 1513.)

(Court of Civil Appeals of Texas.    Amarillo.
March 26, 1919.)

TRUSTS ⬦⊸17, 18(6)—TRUSTS IN LAND—PAROL
AGREEMENTS.

A parol agreement to acquire interest in land
for the joint benefit of the parties, where the
deed was taken in the name of one, is enforce-
able as a trust upon the legal title, although
promise of party seeking to enforce such agree-
ment was not a consideration paid for the joint
interest in land.

Appeal from District Court, Wichita Coun-
ty; Wm. M. Bonner, Judge.

Action by Charles F. Scott against A. J.
Schultz.   Judgment for plaintiff and defend-
ant appeals.   Affirmed.

Martin, Bullington, Boone & Humphrey,
of Wichita Falls, for appellant.
Walter Nelson, of Wichita Falls, for appel-
lee.

HUFF, C. J.   This action was brought by
appellee, Scott, against Schultz, and in his
amended petition he alleged substantially
that he was employed by the Magnolia Pe-
troleum Company and was earning about
$180 per month, and at the special instance
and request of appellant, who owned a well
rig, that appellant and appellee entered into a
verbal contract, whereby appellee was to re-
sign his position and take active charge, con-
trol, and management of appellant's oil well
rig and machinery, and that as a considera-
tion for said services, among other things,
appellee was to have an undivided one-fourth
interest in said rig and machinery, and in
addition thereto a working interest in all
oil and gas leases afterwards acquired by ap-
pellant, upon which said rig was to be operat-
ed, and that on and prior to March 27, 1917,
appellant, W. C. Myers, and appellee were
negotiating for an oil and gas lease from J.
B. Evans and wife, and that at the time and
prior thereto it was agreed by and between
appellant and appellee that their interest in
same, which was an undivided half interest,
would be taken in the name of appellant, but
in trust for the use and benefit of both ap-
pellee and appellant, and that appellee's in-
terest was an undivided one-eighth of the
one-half interest taken in the name of ap-
pellant; that said oil and gas lease was on
that day so acquired, same being on 160 acres
of land, and that before and at the time of
said transfer and conveyance from Evans
and wife to the appellant and W. C. Myers,
it was agreed and understood as aforesaid,
by and between appellant and appellee, that
while the title to one-half of said lease would
be taken and remain in the name of the ap-
pellant, yet said lease would be in trust for

the use and benefit of appellee as well as ap-
pellant, and that appellee's interest would be
an undivided one-sixteenth interest fully
paid in the entire lease.   That in obedience
to the terms of the contract by and between
the parties and in compliance with the terms
and conditions of said lease appellee took
charge of the rig and machinery, and moved
it upon the above-described tract of land, and
succeeded in drilling an oil well upon same,
which rendered the lease very valuable, after
which Myers and Schultz sold the lease to
Silk & Donahue, and Schultz refused to pay
plaintiff his one-sixteenth part of the price
secured, amounting to $4,562.52, for which
he brought this suit.

The appellant, by general and special ex-
ception and by plea, interposed the statute
of frauds, claiming that the contract was
not enforceable, because verbal; also pleaded
that the contract was conditional upon the
plaintiff doing his work in a manner satis-
factory to defendants and acting in all re-
spects for defendants' best interests, and the
plaintiff had violated his agreement, and had
not been true to his trust.

The case was submitted to a jury on spe-
cial issues, and in answer to which they
found that plaintiff and defendant entered
into a contract by the terms of which the
plaintiff was to resign his position he then
held and take active charge, control, and
management of the well, rig, and machinery,
of which the defendant was the owner, or
was interested in, and as a consideration for
said services on the part of the plaintiff,
plaintiff was to have, among other things,
an undivided one-fourth interest in said rig
and machinery, and in addition thereto an
interest in all the oil and gas leases after-
wards acquired by the defendant and upon
which said rig was to be operated; that the
defendant Schultz, at and prior to the time
he, with one W. C. Myers, acquired a certain
oil lease from J. B. Evans and wife, did so
acquire his interest in the same, with the
understanding and agreement between him-
self and the plaintiff, Scott, that the plain-
tiff, Scott, was to own an undivided one-
sixteenth interest in the same, and that the
title thereto should be taken in the name of
Schultz, but in trust, to the one-sixteenth in-
terest, for the use and benefit of plaintiff.
They further found that plaintiff Schultz's
promise of the one-sixteenth interest in the
Evans lease was made before he and W. C.
Myers acquired title to the lease.   The court,
upon the findings of the jury, entered judg-
ment for the appellee against Schultz for the
sum of $4,156, from which this appeal is taken.

The appellant's assignments assert that the
contract set up by the petition and proven
is contrary to the statute of frauds.   The con-
tract was not for the sale of land, but an
agreement to acquire land, entered into be-
fore the title vested in the holder of the legal

title. By argument, it seems to be appellant's contention that there should be a payment of some sort of consideration before the title was acquired by the trustee, and that it could not be based upon services to be rendered upon the land after it was so acquired. As we understand this case, the trust set out, proven, and established by the verdict of the jury is an express trust. Such a trust is distinguishable from a resulting ·trust in which the law creates a trust in favor of the party who pays the consideration, by which title has been acquired in the name of another, and which must be paid, and the trust must arise, at the very time of the transaction. Parker v. Coop, 60 Tex. 118. One of the first cases in this state, if not the first (James ·v. Fulcrod, 5 Tex. 512, 55 Am. Dec. 743), to hold that a parol express trust created before the title vested does not fall under the statute of frauds, also held:

"A consideration may be defined to be something that is given in exchange, something that is mutual, or something which is the inducement to the contract, and it must be a thing which is lawful and competent in value, to sustain the assumption. A valuable consideration is either a benefit to the party promising, or some trouble or prejudice to the party to whom the promise is made. A mutual promise amounts to a sufficient consideration, provided the mutual promises be concurrent in point of time."

The fact upon which that case was decided established an agreement between plaintiff and defendant, who purchased together a certain town lot, to be divided equally, each taking the part nearest his property. The defendant therein bid in the property, and afterwards the plaintiff tendered his part of the purchase money, which was refused by the defendant. It will thus be seen that in that case nothing was paid at the time. There was only the mutual promise of the parties. In a later case, Gardner v. Randell, 70 Tex. 456, 7 S. W. 782, the Supreme Court said:

"A parol contract by which two or more persons agree to purchase land for their joint benefit, the title to be taken in the name of one, is valid at common law, and is not prohibited by our statutes, and hence may be enforced here without reference to the question whether the consideration be paid by the cestui que trust at the time the deed is taken or not. Why should it make any difference if one party should pay the whole consideration, the other agreeing at the time to refund his proportion at some future date?"

The appellant cites the cases of Sprague v. Haines, 68 Tex. 215, 4 S. W. 371; Allen v. Allen, 101 Tex. 362, 107 S. W. 529; Emporia Lumber Co. v. Tucker, 103 Tex. 547, 131 S. W. 408; Bringhurst v. Texas Co., 39 Tex. Civ. App. 500, 87 S. W. 893; Dietrich v. Heintz, 44 Tex. Civ. App. 602, 99 S. W. 417. In each of the above cases it appears the proposed grantor was at the time of the parol contract the owner of the land with the title then vested in him. Clearly those cases fall under the statute (Rev. St. 1911, art. 3965) rendering parol "contract for the sale of real estate or the lease thereof" nonenforceable. The distinction is well illustrated in the case of Sparks v. Taylor, 99 Tex. 411, 90 S. W. 485, 6 L. R. A. (N. S.) 381, where the husband and wife entered into an agreement to acquire title to land for the use of the wife's separate estate, and where the deed was taken to the land in the name of the husband, and where at the time of the agreement the husband signed a note with the wife to procure money on a mortgage executed against her separate estate. The court there said:

"It is evident that this contention is not sustained by the decisions of the court, for in every case cited above the husband signed notes for deferred payments, and the court held in each case that the fact of agreement that the notes should be paid by the separate funds of the wife fixed upon the land purchased the character of separate property, the controlling facts being the intention of the parties and the investment of the wife's separate funds."

See, also, McClintic v. Midland, 106 Tex. 32 at pages 36, 37, 154 S. W. 1157.

This ·court has held that a parol agreement to acquire land for the joint benefit of the parties, where the deed was taken in the name of one and the consideration partly paid or promised to be paid by the other, enforceable as a trust upon the legal title. Ellerd v. Ellison, 165 S. W. 876; McBride v. Briggs, 199 S. W. 341. It is apparently appellant's contention that the drilling of a well on the land after its acquisition is not a consideration paid for the lease, or, in other words, not a part of the purchase price. It must be borne in mind it was the agreement to acquire the land that engrafted the trust on the legal title when acquired. If there was a consideration for the agreement, it was then valid and binding. The jury found, with evidence to support it, that the agreement for one-sixteenth of the land was in consideration that appellee quit his job with the Magnolia Petroleum Company, take charge of appellant's rig, and give it all his time and skill as a driller, and the facts further show that he specially agreed to drill on the particular land in question for a one-sixteenth interest, and that thereafter he did so and brought in a producing well. We believe these facts sufficient to show a consideration for the contract for the one-sixteenth interest in the lease when acquired. Again, the statement of facts in this case shows that the lease so acquired in the name of Schultz & Myers was an ordinary oil lease. Usually the consideration moving to the lessor for the lease is to drill for oil and to secure its production for the royalty to be paid him.

Evidently the drilling of the well for oil was part of the consideration for the lease obtained in this case. We believe the case should be affirmed; and accordingly it is so ordered.