WILM . B. WHEELOCK, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 25449, 25450. Promulgated June 29, 1951.

1436

*Wm. Bernard Clinton, Esq.,* and *Franklin E. Spafford, Esq.,* for the petitioners.

*John B. Higgins, Esq.,* for the respondent.

1438

1440

OPINION.

JOHNSON, *Judge:* The facts are not in dispute. Whether in the taxable years petitioners are taxable upon one-sixteenth of the distributable income from the Bammel properties, as they contend, or upon one-eighth, as the respondent has determined, depends upon the effect given to the deed from petitioners to their son, J. N. Wheelock, Jr.

Petitioners contend that this warranty deed conveyed title to one-half of their one-eighth interest in the oil leases and property therein described and that J. N. Wheelock, Jr., thereby became the owner of same and the income therefrom, and such income was taxable to him and not to them.

Respondent insists that petitioners' contention must be denied because of the holding in *Burnet* v. *Leininger*, 285 U. S. 136, and the recent decision of the Fifth Circuit in *United States* v. *Atkins* (decided May 1, 1951), in which latter case the court said:

\* \* \* The law is well settled that a partner remains taxable on his full share of income from a partnership of which he is a member even though he assigns a part of his interest to another, unless such assignee actually becomes a partner in the original enterprise. \* \* \*

The facts in the instant case differentiate it from the two cases above cited. In both of these the taxpayer, a member of a general or commercial partnership, assigned a part of his interest in the business, or profits therefrom, to a third person in such manner that the assignee did not become a partner in the business nor acquire ownership therein, and hence the taxpayer's ownership in the business and taxability on its income remained the same.

In the *Leininger* case, *supra*, the taxpayer made no formal assignment, but had an "agreement" with his wife that she "was a full, equal partner with him in the interest in the Eagle Laundry Co. and entitled to share equally in the profits and obligated to bear equally any losses." She was not admitted as a partner; the books and records of the firm and partnership returns verified by the taxpayer disclosed no ownership by her; she contributed neither capital nor personal services, while the taxpayer contributed both, and checks covering firm profits were payable to the taxpayer and by him deposited in a joint account, although she had a separate bank account.

Chief Justice Hughes, author of the opinion, said:

* * * Upon the facts as found, the agreement with Mrs. Leininger cannot be taken to have amounted to more than an equitable assignment of one-half of what her husband should receive from the partnership, * * *

In the *Atkins* case, *supra*, the taxpayer was a partner in three different firms,[4] and he transferred "his interest" in each to a newly formed partnership of himself and his son, called Atco Investment Company. His partners in the three original firms were consulted and agreed to the transfer, but the Court found that it was not intended that the Atco Investment Company or the son should become partners in the three original partnerships. After the transfer, the books of the three partnerships were unchanged as to the interest owned by the taxpayer and disclosed no ownership of Atco Investment Company nor of the son therein; the tax returns showed the same membership as theretofore, and distributive share of the profits continued to be made payable to the original partners as before.

The essential facts in the *Atkins* case, *supra*, and the *Leininger* case, *supra*, are alike and Chief Justice Hughes' conclusion in *Leininger* we think applicable also in *Atkins*, viz., that the assignment of one-half interest in the business amounted to nothing more than "an equitable assignment of one-half of what" the taxpayer "should receive from the partnerships."

In the instant case there was no "equitable assignment" of future profits, nor was there a mere assignment of an "interest in a business," but an outright legal conveyance by warranty deed of title in and to specific properties, real and personal, therein described, to-wit: oil and gas leases on 5,000 acres of land, 19 producing oil and gas wells and property appurtenant thereto. The deed referred to no assignment of an interest in a partnership or profits therefrom, but treated only of one-half of the one-eighth interest which the grantors owned in the property conveyed.

[4] The business of two of the firms was "marketing petroleum products," and of the other, a "dehydrating business."

Here, unlike the *Leininger* case, there was a transfer of the "corpus," which produced the income in question. In that case Chief Justice Hughes said:

The respondent urges that the assignment to his wife was of one-half of the "corpus" of his interest and that this "corpus" produced the income in question. The characterization does not aid the contention. That which produced the income was not Mr. Leininger's individual interest in the firm, but the firm enterprise itself, that is, the capital of the firm and the labor and skill of its members employed in combination through the partnership relation in the conduct of the partnership business. * * *

Here it cannot be said that the labor and skill of the members of the so-called partnership contributed to the production of the income, for none of them contributed any services, other than Harrell, and we have found that while his services were of value, the income in question was in the main attributable to the large volume of oil and gas contained in the lands upon which leases were owned and the richness and productivity of the leases and the oil and gas produced therefrom.

Where income is derived from capital or where capital rather than labor and services so largely predominates in the production of the income that labor as a contributing factor may be considered *de minimis*, the tax liability for such income follows ownership. Cf. *Lyman A. Stanton*, 14 T. C. 217, affd. (C. A. 7), 189 F. 2d 297; *Blair v. Commissioner*, 300 U. S. 5. Such is the case here and accordingly, petitioners having parted with the ownership of that interest in the properties which produced the income in question are not taxable thereon, and respondent's adverse determination is reversed. This holding for petitioners makes it unnecessary to consider the question of a mining partnership presented in their brief.

When the deed to Wheelock, Jr., was executed, the record title to the properties conveyed was not in petitioners, but in H. M. Harrell, Trustee. Notwithstanding this, respondent correctly concedes petitioners' ownership of the property. Under Texas law, where there is a parol agreement to acquire interest in land for the joint benefit of the parties and the deed is taken in the name of one of them, it is enforcible as a trust upon the legal title and all parties to the parol agreement own an equitable or beneficial interest in the property. *Schultz v. Scott*, 210 S. W. 830; *Macias v. Macias*, 148 S. W. 2d 240. Furthermore, since all parties at interest recognize petitioners' ownership, respondent, for lack of privity, cannot question their title because of the statute of frauds. *Francis M. Camp*, 21 B. T. A. 962; *Abraham Greenspon*, 8 T. C. 431; *Isaac W. Frank*, 44 B. T. A. 934. Petitioners concede respondent's determination on another issue.

*Decisions will be entered under Rule 50.*